| | |
|---|---|
| CARLOS LOUMIET, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al*, <br><br> Defendants. | Civil Action No. 12-1130 (CKK) |

**MEMORANDUM OPINION**
(August 21, 2014)

Plaintiff Carlos Loumiet brought suit against the United States Government for the actions of its agency, the Office of the Comptroller of the Currency ("OCC"), under the Federal Tort Claims Act ("FTCA") alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy. Plaintiff also filed suit against Defendants Michael Rardin, Lee Straus, Gerard Sexton, and Ronald Schneck (collectively "Individual Defendants"), alleging claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as various state law tort claims. On January 18, 2013, the United States filed a [10] Motion to Dismiss for Lack of Jurisdiction and the Individual Defendants filed a [11] Motion to Dismiss Plaintiff's *Bivens* claims. The Court granted the Individual Defendants' Motion to Dismiss as to Plaintiff's *Bivens* and tort claims. The Court also granted the United States' Motion to Dismiss as to Plaintiff's claims for malicious prosecution and abuse of process under the FTCA, but denied the United States' Motion to Dismiss as to Plaintiff's FTCA claims alleging intentional infliction of

emotional distress, invasion of privacy, negligent supervision, and conspiracy to the extent they are premised on statements made by OCC officials to the press. Presently before the Court are the United States' ("Defendant") [26] Motion for Reconsideration and Plaintiff's [27] Motion for Reconsideration or, in the alternative, Motion Requesting the Court to Enter a Final Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole the Court shall DENY Plaintiff's Motion for Reconsideration and GRANT IN PART and DENY IN PART Defendant's Motion for Reconsideration for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

In March 2001, after becoming troubled by the manner in which the OCC conducted an investigation of Hamilton Bank, N.A., Plaintiff wrote to Treasury Inspector General Jeffrey Rush and other Treasury Department officials, expressing concerns about the OCC's enforcement action against the bank. Compl. ¶ 49. In April 2001, Plaintiff sent the Treasury Secretary and the Office of Inspector General ("OIG") a second letter, again expressing concerns regarding the OCC's regulatory actions. *Id.* ¶ 50. On July 18, 2001, the Treasury Inspector General notified Plaintiff that the OIG had "considered the information and argument [Plaintiff] presented, and . . . concluded that it did not provide a basis for the Office of Inspector General to consider further investigation . . . ." Def.'s Mot. to Dismiss, ECF No. [10], Ex. 3 (Letter from Jeffrey Rush, Jr., Inspector General). On December 14, 2001, Plaintiff filed a lawsuit against the OCC in the Southern District of Florida, alleging that the OCC's supervisory actions were motivated by anti-

---

[1] Defendant's Motion for Reconsideration ("Def.'s Mot."), ECF No. [26]; Plaintiff's Motion for Reconsideration (Pl.'s Mot."), ECF No. [27]; Defendant's Opposition to Plaintiff's Motion for Reconsideration ("Def.'s Opp'n."), ECF No. [34]; Plaintiff's Opposition to Defendant's Motion for Reconsideration ("Pl.'s Opp'n."), ECF No. [38]; Defendant's Reply to Plaintiff's Opposition ("Def.'s Reply"), ECF No. [40]; Plaintiff's Reply to Defendant's Opposition (Pl.'s Reply), ECF No. [41].

Hispanic bias. *See Hamilton Bank, N.A. v. OCC*, Case No. 01-cv-4994 (S.D. Fla.). This case was voluntarily dismissed in 2002.

On November 6, 2006, the OCC initiated an enforcement proceeding against Plaintiff, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") of 1989, Pub. L. No. 101-73, 102 Stat. 183 (codified in scattered sections of Title 12 of the U.S. Code). Compl. ¶ 16; *Loumiet v. Office of the Comptroller of the Currency*, 650 F. 3d 796, 799 (D.C. Cir. 2011). The action, brought by the OCC's Enforcement and Compliance Division, alleged that Plaintiff was an "institution-affiliated party" ("IAP") who, as part of his role in the independent investigation of Hamilton, had "knowingly or recklessly . . . breach[ed his] fiduciary duty," and as a result "caused . . . a significant adverse effect" on the Bank. *Loumiet*, 650 F. 3d at 799. Plaintiff claims that this prosecution as well as the surrounding actions made by OCC officials during the prosecution were made in retaliation for his letters expressing concern over bias within the OCC. Compl. ¶ 15. During the three-week bench trial, Plaintiff alleges that the Individual Defendants aggressively pressed unsubstantiated charges and made false statements to the press covering the proceeding, both of which caused substantial damage to his reputation and career. *Id*. Ultimately, on June 18, 2008, an Administrative Law Judge ("ALJ") recommended complete dismissal of the Division's claims. *Id*. ¶ 16. On July 27, 2009, the Comptroller, reviewing the ALJ's recommendation, agreed dismissal of all claims against Loumiet was appropriate, but on different grounds from the ALJ. *Id.*

### B. Procedural History

On July 9, 2012, Plaintiff filed suit against the United States Government for the actions of its agency, the OCC, under the Federal Tort Claims Act alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, negligent supervision,

and conspiracy. Plaintiff also filed suit against Defendants Michael Rardin, Lee Straus, Gerad Sexton, and Ronald Schneck (collectively "Individual Defendants"), alleging First and Fifth Amendment claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as various state law tort claims. The Individual Defendants filed a Motion to Dismiss Plaintiff's *Bivens* claims and the United States filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In ruling on Defendants' motions, the Court dismissed Plaintiff's *Bivens* claims against the Individual Defendants as untimely and his tort claims against the Individual Defendants as precluded by the Westfall Act. With respect to Plaintiff's claims for malicious prosecution and abuse of process against the United States Government under the FTCA, the Court dismissed these claims pursuant to the discretionary function exception. However, the Court allowed Plaintiff's FTCA claims alleging intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy to proceed "to the extent they are premised on statements made by OCC officials to the press." Mem. Op. (Sept. 12, 2013), at 2.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b)[2] provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A motion to reconsider brought under Rule 54(b) may be granted "as justice requires." *Singh v. George Wash. Univ.,* 383 F.Supp.2d 99, 101 (D.D.C. 2005) (quoting *Cobell v. Norton,* 224 F.R.D. 266, 272 (D.D.C. 2004)). Considerations a court may take into

---

[2] Although Defendant moves the Court to reconsider its decision under Federal Rule of Civil Procedure 59(e), Rule 59(e) is not the appropriate Rule to move for reconsideration because the Court's opinion did not adjudicate all the claims as to all the parties and thus was not a final judgment.

4

account under this standard include whether the court "patently" misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. *See id.* (quoting *Cobell*, 224 F.R.D. at 272). In this Circuit, it is well-established that "motions for reconsideration," whatever their procedural basis, cannot be used as "an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10, n. 4 (D.D.C. 2011) (quoting *Secs. & Exch. Comm'n v. Bilzerian*, 729 F.Supp.2d 9, 14 (D.D.C. 2010)). The party moving the court to reconsider its decision carries the burden of proving that some harm would accompany a denial of the motion to reconsider: "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell v. Norton,* 355 F.Supp.2d 531, 540 (D.D.C. 2005). Finally, "even if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id*.

### III. DISCUSSION
#### A. Plaintiff's *Bivens* Claims

In his Motion for Reconsideration, Plaintiff first argues that the Court should not have dismissed his *Bivens* claims as untimely because they were timely under the continuing-tort theory that the Court applied to Plaintiff's FTCA claims, but declined to apply to Plaintiff's *Bivens* claims. However, the Court declined to apply this theory to Plaintiff's *Bivens* claims because Plaintiff did not raise the continuing-tort theory with respect to his *Bivens* claims. *See*

5

Mem. Op. at 15 n. 3; *see also David v. District of Columbia*, 436 F.Supp.2d 83, 90 n. 2 (D.D.C. 2006) (holding that arguments not raised in the defendant's original motion are deemed waived and will not be considered); *Oak Ridge Care Center, Inc. v. Racine County, Wis.*, 896 F.Supp. 867, 876 (E.D. Wis. 1995) (holding that "courts will not make arguments for the litigants") (citing *Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir. 1989) (refusing to entertain "asserted but unanalyzed and underdeveloped claims"). Plaintiff clearly could have made this argument at the time the parties briefed Defendants' motions to dismiss. Indeed, Plaintiff asserted several other arguments against Defendants' contention that Plaintiff's *Bivens* claims did not comply with the statute of limitations. Plaintiff also made the argument that the continuing-tort theory excused his failure to comply with the statute of limitations in the FTCA context and thus Plaintiff was clearly aware of the availability of the continuing-tort doctrine. It is well-established law that motions to reconsider may not be used to raise arguments that could have been raised prior to the court's ruling on the underlying motion. *Gaither*, 771 F.Supp.2d at 10 (noting, in response to a Rule 54(b) motion for reconsideration, that motions for reconsideration cannot be used as "a vehicle for presenting theories or arguments that could have been advanced earlier." (internal citation omitted)). Plaintiff's contention that this argument was not available at the time he filed his briefs since the Court's Order applying the continuing-tort theory to the FTCA's statute of limitations constituted an intervening change in controlling law is disingenuous. The Court was not making new law in its Memorandum Opinion, but applying established D.C. Circuit continuing-tort doctrine. *See Whelan v. Abell*, 953 F.2d 663, 673-74 (D.C. Cir. 1992) (citing *Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984)). Accordingly, the Court will not entertain Plaintiff's argument that his *Bivens* claims are not untimely pursuant to the continuing-tort theory.

### B. Discretionary Function Exception

Plaintiff next takes issue with the Court's dismissal, pursuant to the discretionary function exception, of Plaintiff's FTCA claims related to Defendant's decision to prosecute Plaintiff. Specifically, the Court held that to the extent Plaintiff's FTCA claims are premised on Defendant's allegedly retaliatory prosecution of Plaintiff, these claims must be dismissed because the FTCA's waiver of sovereign immunity does not apply to governmental acts that are discretionary in nature, such as "prosecutorial decisions as to whether, when, and against whom to initiate prosecutions." Mem. Op. (Sept. 12, 2013), at 22 (quoting *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983)). In his Motion for Reconsideration, Plaintiff argues that retaliatory prosecution is not protected by the discretionary function exception because such prosecutions violate the Constitution. However, the law in this Circuit is clear that "the discretionary function exception immunizes *even government abuses of discretion*." *Shuler v. United States*, 531 F.3d 930, 935 (D.C. Cir. 2008) (emphasis added).

Indeed, courts in this Circuit have explicitly held that even "constitutionally defective" actions, if closely intertwined with the decision to prosecute, are in fact protected by the discretionary function exception. For example, in *Tabman v. F.B.I.*, a former FBI special agent brought an action against the FBI seeking damages for intentional infliction of emotional distress and for alleged violations of his constitutional rights in connection with an investigation the FBI conducted of him. 718 F.Supp.2d 98, 99-100 (D.D.C. 2010). Judge Paul L. Friedman held that "where the investigator's conduct during an investigation is 'inextricably tied' to the overall discretionary decision to investigate and then prosecute a plaintiff, such actions are included within the discretionary function exception to the FTCA jurisdiction." *Id*. at 105. This conclusion, Judge Friedman held, "is true 'even if there was an improper, tortious, and

7

*constitutionally defective* manner in which the investigation was carried [out].'" *Id*. (quoting *Gray*, 712 F.2d at 515-16). Similarly, in *Gray v. Bell*, the Court of Appeals for the D.C. Circuit held that the "improper, tortious, and *constitutionally defective*" actions allegedly undertaken by the defendants were "too intertwined with purely discretionary decisions of the prosecutors to be sufficiently separated from the initial decision to prosecute," and thus the discretionary function exception applied. 712 F.2d at 515-16 (emphasis added). Likewise, here, although the reasons behind Defendant's decision to prosecute are allegedly unconstitutional, such reasoning cannot be separated from the initial decision to prosecute. Accordingly, the Court again holds that Plaintiff's claims related to Defendants' allegedly retaliatory prosecution fall within the discretionary function exception.

**C. Subject Matter Jurisdiction over Defamation Claims under FTCA**

Finally, Defendant, in its Motion for Reconsideration, argues that the Court erred in allowing Plaintiff's claims for intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy to proceed to the extent they are premised on harm suffered from OCC officials' statements to the press. Defendant correctly notes that, under the FTCA, the United States retains immunity with respect to all claims "arising out of" defamation thus depriving a court of subject matter jurisdiction over such claims. Def.'s Mot. at 3 (citing 28 U.S.C. § 2680(h) (the FTCA's waiver of immunity shall not apply to "any claim arising out of . . . libel [or] slander"). Defendant contends that Plaintiff's claims, even if they are not styled as defamation claims, are not actionable under the FTCA, because they allege injury whose root cause was the dissemination of defamatory information. *Id*. at 4. Defendant argues that since the only claims remaining before this Court, per the Court's Memorandum Opinion, are Plaintiff's FTCA claims "predicated on harm suffered from alleged defamatory statements made

by OCC officials to the media," these claims must be dismissed pursuant to 28 U.S.C. § 2680(h). *Id.* at 5.

The Court did not have the occasion to evaluate this argument in the parties' original briefing because Defendant did not make the argument. Plaintiff contends that Defendant waived this argument by failing to make it earlier; however, since this argument implicates the Court's subject matter jurisdiction over these claims, such an argument can be raised at any time.[3] *See* Fed. R. Civ. P. 12(h)(3) ("if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *Thomas v. Nicholson*, 539 F.Supp.2d 205, 216 (D.D.C. 2008) (lack of subject matter jurisdiction "is a defense that can be raised at any time prior to a final ruling on the merits").

To be clear, the Court's September 12, 2013, Memorandum Opinion held that "to the extent [Plaintiff's intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy claims] allege harm from the OCC officials' statements to the press"—as opposed to harm from the retaliatory prosecution alone—Plaintiff's claims were not dismissed. Mem. Op. (Sept. 12, 2013), at 26. As Plaintiff correctly notes in his Opposition to Defendant's Motion for Reconsideration, the Court did not expressly limit the remaining viable claims to those based on "*defamatory statements*"—only those based on "statements" to the press. Pl.'s Opp'n at 8. Plaintiff argues that "some of the statements [made to the press] may not have been defamatory" and thus to the extent his claims are attributable to those statements, these claims survive. *Id.* After a thorough review of Plaintiff's Complaint, however, the Court finds that all of Plaintiff's allegations regarding statements made to the press allege defamation, specifically, that Defendant provided false information to the press. Thus, to the extent

---

[3] This argument is thus unlike the continuing-tort theory argument raised by Plaintiff in his Motion for Reconsideration, which does not implicate the Court's jurisdiction.

9

Plaintiff's remaining claims allege injuries arising out of the statements Plaintiff alleges Defendant made to the press, these claims arise out of allegedly defamatory statements and the United States has not waived its sovereign immunity as to such claims.[4]

The Court does, however, agree with Plaintiff's argument that Plaintiff's invasion of privacy claim remains actionable under the FTCA even to the extent it arises out of "the OCC officials' statements to the press." Plaintiff clearly alleged in his Complaint that his invasion of privacy claim was based on the dissemination of "*private* facts that would not otherwise have become public" and not on the defamatory aspect of these facts. Compl. ¶ 118. Thus, the Court finds that Plaintiff's invasion of privacy claim does not "arise out of" defamation. In its Reply in Support of its Motion for Reconsideration, Defendant argues that even if the defamation exception did not bar Plaintiff's invasion of privacy claim, this claim should be dismissed because Plaintiff has failed to sufficiently plead a claim of invasion of privacy. However, Defendant did not make this argument in its original briefing in support of its Motion to Dismiss. Moreover, Defendant now only makes this argument in its Reply in Support of its Motion for Reconsideration. "As a general matter, it is improper for a party to raise new arguments in a reply brief because it deprives the opposing party of an opportunity to respond to them, and

---

[4] Plaintiff also argues in his Opposition that his remaining FTCA claims do not "arise out of" defamation because the "essence" of these claims is really Defendant's "pattern" of "extreme and outrageous conduct" which relates to the allegedly retaliatory prosecution. Pl.'s Opp'n. at 4. The Court notes that it originally conducted a liberal reading of Plaintiff's Complaint and concluded that Plaintiff's FTCA claims arose out of two events—the retaliatory prosecution and the statements to the press. Now, Plaintiff argues that the statements to the press were nothing more than "collateral" to his FTCA claims which are really based on the conduct directly relating to the retaliatory prosecution. *Id.* Indeed, Plaintiff's interpretation of the Complaint is supported by the fact that only Plaintiff's invasion of privacy count actually mentions the statements to the press within the facts relevant to that count. Every other count only references the harm caused by the allegedly retaliatory prosecution. Although Plaintiff puts forth this characterization of his Complaint to show that his remaining FTCA claims *do not* arise out of defamation and thus are actionable under the FTCA, Plaintiff's characterization does no more than hurt his FTCA claims because the Court has already found that, pursuant to the discretionary function exception, they must be dismissed to the extent they are based on the allegedly retaliatory prosecution.

courts may disregard any such arguments." *Performance Contracting, Inc. v. Rapid Response Const., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010). The Court is not willing to entertain such an untimely argument.

Accordingly, the Court GRANTS Defendant's Motion for Reconsideration and DISMISSES in their entirety Plaintiff's intentional infliction of emotional distress, negligent supervision, and conspiracy claims. The Court, however, DENIES Defendant's Motion for Reconsideration as to Plaintiff's invasion of privacy claim to the extent that it arises out of the public disclosure of private facts in the statements Plaintiff alleges Defendant made to the press and not out of defamation.

### D. Motion to Enter a Final Judgment

In the event the Court does not reconsider its decision to dismiss Plaintiff's *Bivens* claims, which it has not, Plaintiff requests that this Court enter a final judgment with respect to the Individual Defendants. Pl.'s Mot. at 7. Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." "Only 'exceptional cases' merit Rule 54(b)'s direct entry, and the district court has discretion in identifying such cases because of its 'familiar[ity] with the case and with any justifiable reasons for delay.'" *Ben–Rafael v. Islamic Republic of Iran*, 718 F.Supp.2d 25, 33 (D.D.C. 2010) (quoting *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998)). Ordinarily, the presumption against piecemeal appeals will be sufficient to deny certification under Rule 54(b). *See Curtiss–Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 8 (1980) ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining

unresolved claims."). There is sufficient factual and legal overlap between Plaintiff's remaining invasion of privacy claim and the claims the Court denied in response to the motion to dismiss to conclude that separate appeals would be an inappropriate use of judicial resources. Accordingly, the Court declines to certify its ruling as a final order under Rule 54(b).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's [27] Motion for Reconsideration or, in the alternative, Motion Requesting the Court to Enter a Final Judgment and GRANTS IN PART and DENIES IN PART Defendant's [26] Motion for Reconsideration. Accordingly, Plaintiff's *Bivens* claims against the Individual Defendants remain dismissed as do Plaintiff's claims related to Defendant's allegedly retaliatory prosecution. Plaintiff's FTCA claims are now dismissed in their entirety, except for Plaintiff's invasion of privacy claim to the extent it alleges harms from the public disclosure of private facts in the statements Plaintiff alleges Defendant made to the press. The Court will not enter final judgment with respect to the Individual Defendants in this case.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE