UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS LOUMIET,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al*,<br><br>    Defendants. | Civil Action No. 12-1130 (CKK) |

MEMORANDUM OPINION
(May 28, 2015)

Plaintiff Carlos Loumiet brought suit against the United States Government for the actions of its agency, the Office of the Comptroller of the Currency ("OCC"), under the Federal Tort Claims Act ("FTCA") alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy. Plaintiff also filed suit against Defendants Michael Rardin, Lee Straus, Gerard Sexton, and Ronald Schneck (collectively "Individual Defendants"), alleging claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as various state law tort claims. On September 12, 2013, the Court granted the Individual Defendants' Motion to Dismiss as to Plaintiff's *Bivens* and tort claims. The Court also granted the United States' Motion to Dismiss as to Plaintiff's claims for malicious prosecution and abuse of process under the FTCA, but denied the United States' Motion to Dismiss as to Plaintiff's FTCA claims alleging intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy to the extent they are premised on statements made by OCC officials to the press. Each of the parties subsequently filed a Motion for Reconsideration. On August 21, 2014, the Court issued a Memorandum Opinion

1

and Order dismissing Plaintiff's remaining FTCA claims in their entirety, "except for Plaintiff's invasion of privacy claim to the extent it alleges harms from the public disclosure of private facts in the statements Plaintiff alleges Defendant made to the press." Mem. Op. (Aug. 21, 2014), at 12.

Presently before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction Plaintiff's remaining invasion of privacy claim. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall GRANT Defendant's Motion to Dismiss and DISMISS Plaintiff's remaining claim for the reasons that follow.

## I.  BACKGROUND

### A. Factual Background

In March 2001, after becoming troubled by the manner in which the OCC conducted an investigation of Hamilton Bank, N.A., Plaintiff wrote to Treasury Inspector General Jeffrey Rush and other Treasury Department officials expressing concerns about the OCC's enforcement action against the bank. Compl. ¶ 49. In April 2001, Plaintiff sent the Treasury Secretary and the Office of Inspector General ("OIG") a second letter, again expressing concerns regarding the OCC's regulatory actions. *Id.* ¶ 50. On July 18, 2001, the Treasury Inspector General notified Plaintiff that the OIG had "considered the information and argument [Plaintiff] presented, and . . . concluded that it did not provide a basis for the Office of Inspector General to consider further investigation . . . ." Def.'s Mot. to Dismiss, ECF No. [10], Ex. 3 (Letter from Jeffrey Rush, Jr., Inspector General). On December 14, 2001, Plaintiff filed a lawsuit against the OCC in the Southern District of Florida, alleging that the OCC's supervisory actions were motivated by anti-

---

[1] The United States' Renewed Motion to Dismiss for Lack of Jurisdiction ("Def.'s Mot."), ECF No. [50]; Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. [51]; Defendant's Reply in Support of the United States' Renewed Motion to Dismiss for Lack of Jurisdiction ("Def.'s Reply"), ECF No. [52].

Hispanic bias. *See Hamilton Bank, N.A. v. OCC*, Case No. 01-cv-4994 (S.D. Fla.). This case was voluntarily dismissed in 2002.

On November 6, 2006, the OCC initiated an enforcement proceeding against Plaintiff, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") of 1989, Pub. L. No. 101-73, 102 Stat. 183 (codified in scattered sections of Title 12 of the U.S. Code). Compl. ¶ 16; *Loumiet v. Office of the Comptroller of the Currency*, 650 F.3d 796, 799 (D.C. Cir. 2011). The action, brought by the OCC's Enforcement and Compliance Division, alleged that Plaintiff was an "institution-affiliated party" ("IAP") who, as part of his role in the independent investigation of Hamilton, had "knowingly or recklessly . . . breach[ed his] fiduciary duty," and, as a result, "caused . . . a significant adverse effect" on the Bank. *Loumiet*, 650 F.3d at 799. Plaintiff claims that this prosecution as well as the surrounding actions made by OCC officials during the prosecution were made in retaliation for his letters expressing concern over bias within the OCC. Compl. ¶ 15. Plaintiff alleges that during the three-week bench trial in 2007 the Individual Defendants aggressively pressed unsubstantiated charges and made statements to the press covering the proceeding, both of which caused substantial damage to his reputation, career, and privacy. *Id*. Ultimately, on June 18, 2008, an Administrative Law Judge ("ALJ") recommended complete dismissal of the Division's claims. *Id*. ¶ 16. On July 27, 2009, the Comptroller, reviewing the ALJ's recommendation, agreed dismissal of all claims against Plaintiff was appropriate, but on different grounds from the ALJ. *Id.*

**B. Procedural Background**

On July 20, 2011, Plaintiff presented an administrative claim to the OCC, demanding $4 million in damages and other relief. *Id*. ¶ 110. Plaintiff alleged that the OCC initiated and conducted the enforcement action against him in retaliation for his earlier criticism of the agency. *Id.* ¶ 8. The OCC denied his claim on January 9, 2012. *Id.* ¶ 110. On July 9, 2012, Plaintiff filed suit against the

3

United States Government for the actions of its agency, the OCC, under the FTCA alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy, as well as several *Bivens* and state law tort claims against three individual Defendants. In ruling on Defendants' motions, the Court dismissed Plaintiff's *Bivens* claims against the Individual Defendants as untimely and the tort claims as precluded by the Westfall Act. With respect to Plaintiff's claims for malicious prosecution and abuse of process against the United States Government under the FTCA, the Court dismissed these claims pursuant to the discretionary function exception. However, the Court allowed Plaintiff's FTCA claims alleging intentional infliction of emotional distress, invasion of privacy, negligent supervision, and conspiracy to proceed "to the extent they are premised on statements made by OCC officials to the press." Mem. Op. (Sept. 12, 2013), at 2.

    The parties subsequently filed motions for reconsideration. The Court denied Plaintiff's Motion for Reconsideration, but granted Defendant's Motion in part. The Court dismissed, in their entirety, all of Plaintiff's remaining FTCA claims, except for invasion of privacy, because they arose out of Plaintiff's defamation claim and the FTCA's waiver of immunity does not apply to any claim arising out of libel or slander. The Court did not dismiss Plaintiff's invasion of privacy claim to the extent it alleges harms from the public disclosure of private facts in the statements Plaintiff alleges Defendant made to the press, and not harm from defamation.

    The Court held a Status Hearing in this matter on September 17, 2014. During the Status Hearing, Defendant indicated that it intended to challenge Plaintiff's remaining invasion of privacy claim on jurisdictional grounds. Specifically, Defendant contended that Plaintiff's invasion of privacy claim was barred by the statute of limitations. The Court subsequently ordered Defendant to submit a letter to the Court addressing whether the Court had resolved the issue of subject matter

jurisdiction over Plaintiff's invasion of privacy claim, "whether the Court possesses subject matter jurisdiction over Plaintiff's remaining invasion of privacy claim and, specifically, whether the continuing tort doctrine applies to this claim." Order (Oct. 15, 2014), ECF No. [47], at 1. Plaintiff submitted a response to Defendant's letter and Defendant was afforded an opportunity to reply. After reviewing the parties' letters, the Court found that the Court had not addressed in any of its previous opinions whether the continuing tort doctrine applies to Plaintiff's invasion of privacy claim[2] or whether the Court possesses subject matter jurisdiction over this particular claim. Accordingly, the Court ordered the parties to fully brief "the issue of the Court's subject matter jurisdiction over Plaintiff's FTCA claim alleging invasion of privacy." Order (Oct. 20, 2014), ECF No. [49], at 1. Having received the parties' briefing on this discrete remaining issue, Defendant's Motion to Dismiss for Lack of Jurisdiction is now ripe for review.

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

---

[2] Although none of the parties drew the Court's attention to this language in their briefing of the present motion, the Court does acknowledge that in its September 12, 2013, Memorandum Opinion resolving Defendant's initial Motion to Dismiss, the Court made the broad statement that, "pursuant to the continuing tort doctrine, Plaintiff's FTCA claims need not be dismissed on statute of limitations grounds." Mem. Op. (Sept. 12, 2013), at 21. In coming to this conclusion, however, the Court's analysis of the continuing tort doctrine focused exclusively on the doctrine's applicability to claims alleging harm from a *prosecution*. *Id.* at 19-21. The Court never conducted an analysis of whether claims alleging harm from the press statements themselves complied with the statute of limitations pursuant to the continuing tort doctrine. The Court acknowledges that its initial statement about the applicability of the continuing tort doctrine to Plaintiff's FTCA claims was confusingly broad since the Court's analysis of the doctrine is clearly limited to tortious injury arising out of lawsuits, and not statements to the press.

*Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007), *aff'd* 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008) (citations omitted).

### III.   DISCUSSION

Count II of Plaintiff's Complaint alleges that "[t]he OCC and Individual Defendants invaded [Plaintiff's] privacy by making public through the Notice of Charges and their statements to the press and press releases, private facts that would not otherwise have become public concerning [Plaintiff's] representation of Hamilton." Compl. ¶ 118. Plaintiff further alleges that "[t]he facts disclosed would be offensive to any reasonable person." *Id.* ¶ 119.

Defendant makes two arguments in an effort to show that the Court does not have subject matter jurisdiction over this invasion of privacy claim. First, Defendant argues that there are no allegations in Plaintiff's Complaint identifying a non-defamatory statement that constituted an invasion of privacy, consequently, the FTCA's libel/slander exception divests the Court of subject matter jurisdiction over Plaintiff's invasion of privacy claim.[3] Def.'s Mot. at 6. Defendant already

---

[3] Within this argument, Defendant also argues that the alleged disclosure of Plaintiff's representation of Hamilton Bank is not actionable as an invasion of privacy because the disclosure of the allegedly "private facts" was either privileged or of "legitimate concern" to the public. Def.'s Mot. at 7-9. As the Court finds that Plaintiff's invasion of privacy claim is barred by the statute of limitations, the Court need not address these additional arguments for dismissal.

raised, and the parties already fully briefed, this argument in Defendant's Motion for Reconsideration. In resolving Defendant's Motion for Reconsideration, the Court found that "Plaintiff clearly alleged in his Complaint that his invasion of privacy claim was based on the dissemination of '*private* facts that would not otherwise have become public' and not on the defamatory aspect of these facts." Mem. Op (Aug. 21, 2014), at 10. Accordingly, the Court found that Plaintiff's invasion of privacy claim did not arise out of defamation and thus was not barred by the FTCA's libel/slander exception. *Id.* As Defendant has not made any new arguments regarding the applicability of the libel/slander exception, the Court need not revisit its holding on this issue.

Defendant's second argument is that Plaintiff's remaining claim is barred by the statute of limitations and cannot be saved by the "continuing tort" doctrine. The Court agrees. Under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). In this case, Plaintiff filed his administrative claim with the OCC alleging various tort claims on July 20, 2011, meaning any claims which accrued prior to July 20, 2009, are barred under the FTCA's statute of limitations. Defendant argues that Plaintiff's invasion of privacy claim is barred by the two-year statute of limitations because the statements to the press on which the claim is based occurred in October 2007 and Plaintiff became aware of the statements in 2007—well before July 2009.

While recognizing the general rule that an FTCA claim accrues when a plaintiff "has discovered both his injury and its cause," *United States v. Kubrick*, 444 U.S. 111, 120 (1979), Plaintiff argues that the continuing tort doctrine should apply here. Under the continuing tort doctrine, "when a tort involves continuing injury, the cause of action accrues, and the limitation

7

period begins to run, at the time the tortious conduct ceases." *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (applying the doctrine to an FTCA claim). "This continuing-tort doctrine, which becomes relevant only when the tortious conduct is ongoing, is to be distinguished from the rule applicable when the plaintiff's *injury* continues or is manifested after the tortious conduct has ceased." *Id.* at 822 n. 23 (emphasis added). "Although [the continuing tort] doctrine is most commonly applied when the acts are 'by nature of a repetitive character and [when] . . . no single act can be identified as the cause of significant harm, it is not limited to such circumstances. Rather, the theory applies even to a series of acts that are not inherently 'of a repetitive character' and even when a plaintiff was sufficiently aware of the harm caused to file an administrative complaint challenging the defendant's conduct." *Rochon v. F.B.I.*, 691 F.Supp. 1548, 1563 (D.D.C. 1988).

Plaintiff alleges in his briefing that Defendant made four statements that publicly disclosed private facts about Plaintiff's representation of Hamilton Bank and that these statements were part of a continuing tort. The first statements occurred in the Notice of Charges which was filed on November 6, 2006; the second statement occurred in an October 3, 2007, press release; the third statement happened before the October 2007 trial "when the lead prosecutor disclosed additional privileged and private information relating to [Plaintiff's] investigation;" and the fourth set of statements occurred in the Final Decision issued by the OCC on July 27, 2009, dismissing the charges against Plaintiff. Pl.'s Opp'n at 9-10. Plaintiff contends that, together, these statements constitute a "continuous chain of tortious activity" in which "no single incident . . . can 'fairly or realistically be identified as the cause of significant harm' [making it] proper to regard the cumulative affect of the conduct as actionable." *Id.* at 6 (quoting *Dooley v. United Technologies Corp.*, No. 91-2499, 1992 WL 167053, *13 (D.D.C. June 17, 1992)). Plaintiff argues that since

8

the tortious conduct ceased with the OCC's Final Decision on July 27, 2009, Plaintiff's invasion of privacy claim, and his injury from all of the statements that make up that claim, should be considered to have accrued on July 27, 2009—seven days into the statutory period.

Even assuming it is appropriate to apply the continuing tort theory to this series of statements, there are several problems with Plaintiff's argument. The only tortious statements Plaintiff alleges occurred within the statute of limitations (i.e. between July 20, 2009, and July 20, 2011) were the statements contained in the OCC's Final Decision issued on July 27, 2009. All of the other alleged statements occurred outside of the statutory period. Accordingly, the OCC's Final Decision is essential to Plaintiff's argument that his invasion of privacy claim is not barred by the statute of limitations. However, Count II—Plaintiff's invasion of privacy claim—in no way mentions the Final Decision as a medium through which private facts about Plaintiff were made public. Instead, Plaintiff's invasion of privacy claim is based only on "the Notice of Charges and [Defendants'] statements to the press and press releases."[4] Compl. ¶ 118. The Court finds it unreasonable to read the Complaint to include the Final Decision as a basis for Plaintiff's invasion of privacy claim when Plaintiff specifically enumerated the Notice of Charges, press statements, and press releases within Count II of his Complaint, but omitted any reference to the Final Decision. Moreover, Plaintiff cannot now seek to amend his Complaint through his pleadings to include the OCC's Final Decision as a basis for his invasion of privacy claim. *See Sloan v. Urban Title Servs., Inc.*, 689 F.Supp.2d 94, 114 (D.D.C. 2010) (explaining that a plaintiff cannot amend her complaint through her opposition briefing); *Juergens v. Urban Title Servs.*, 533 F.Supp.2d 64,

---

[4] Within the factual recitation section of Plaintiff's Complaint, Plaintiff does state that the OCC "further bad-mouth[ed] [Plaintiff] publicly in the Final Decision as a parting shot." Compl. ¶ 93. The Court finds this allegation insufficient to put Defendant on notice that the statements included in the OCC's Final Decision were also part of Plaintiff's invasion of privacy claim. Plaintiff cannot expect Defendant, much less the Court, to infer from an allegation that a document "bad-mouth[ed]" Plaintiff that that document published private facts about Plaintiff.

75 (D.D.C. 2008) (same).

Furthermore, the Court previously ruled that Plaintiff's invasion of privacy claim survived the prior Motion to Dismiss and Motion for Reconsideration "to the extent that it arises out of the public disclosure of private facts in the statements Plaintiff alleges Defendant *made to the press . . . .*" Mem. Op. (Aug. 21, 2014), at 11 (emphasis added). The OCC's Final Decision was not a statement to the press; instead, it was an integral aspect of Defendant's prosecution of Plaintiff. To the extent that Plaintiff is alleging that facts made public through the *prosecution* invaded his privacy, the Court has already ruled that Plaintiff's claims based on harms suffered from the prosecution are barred under the discretionary function exception. *See* Mem. Op. (Sept. 12, 2013), at 25. For all of these reasons, Plaintiff cannot now attempt to base his invasion of privacy claim and his continuing tort argument on the OCC's issuance of the Final Decision. Accordingly, the Court finds that Plaintiff's invasion of privacy claim is based on allegedly tortious statements that were made prior to 2009 and, thus, Plaintiff's claim is barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendant's Motion to Dismiss for Lack of Jurisdiction and DISMISS this case in its entirety. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE