# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CARLOS LOUMIET,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

    *Defendants.*

Civil Action No. 12-1130 (CKK)

## MEMORANDUM OPINION
(June 5, 2018)

Defendants[1] seek a stay of discovery while the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reviews this Court's decisions that, *inter alia*, recognize a First Amendment *Bivens* claim for retaliatory prosecution, find that this claim has been plausibly alleged against Defendants Michael Rardin, Gerard Sexton, and Ronald Schneck, and reject those Defendants' immunity defenses. *See* Mem. Op., ECF No. 71; Mem. Op., ECF No. 82; Notice of Appeal, ECF No. 86. Prior to those decisions, this Court had stayed discovery pending its evaluation of the latest round of motions to dismiss. Mem. Op. and Order, ECF No. 70. While his frustration is understandable, Plaintiff Carlos Loumiet fails to persuade the Court that discovery should now proceed absent final

---

[1] The individually named defendants in this matter are Michael Rardin, Lee Straus, Gerard Sexton, and Ronald Schneck. They are referred to collectively as the "Individual Defendants." While all claims against Mr. Straus have been dismissed without prejudice, Order, ECF No. 72, at 1, Defendants' [86] Notice of Appeal indicates that Mr. Straus participates in the appeal to the Court of Appeals, and accordingly he is included in this Opinion among the Individual Defendants. The United States is referred to, hereinafter, as the "Government." Collectively, the Individual Defendants and Government are referred to as "Defendants."

1

resolution of these issues by the D.C. Circuit.

Accordingly, upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendants' [88] Motion to Stay Discovery Pending Interlocutory Appeal ("Motion to Stay").[3] The Court shall extend its **STAY** of discovery pending resolution of Defendants' interlocutory appeal. *See* Min. Order of Feb. 22, 2018 (granting temporary stay until issuance of this decision).

## I. BACKGROUND

The Court's previous opinions in this matter extensively discuss its factual background. *E.g.*, *Loumiet v. United States*, 968 F. Supp. 2d 142, 145-47 (D.D.C. 2013) (*"Loumiet I"*).[4]

---

[2] The Court's consideration has focused on the following documents:

- Defs.' Mot. and Mem. of P. & A. in Supp. of Mot. to Stay Disc. Pending Interlocutory Appeal, ECF No. 88 ("Defs.' Mot.");
- Carlos Loumiet's Opp'n to the Defs.' Mot. to Stay, ECF No. 89 ("Pl.'s Opp'n");
- Defs.' Reply Mem. in Supp. of Mot. to Stay Disc. Pending Interlocutory Appeal, ECF No. 90 ("Defs.' Reply"); and
- Carlos Loumiet's Sur-Reply in Opp'n to the Defs.' Mot. to Stay, ECF No. 92-1 ("Pl.'s Sur-Reply").

[3] Because the Court finds that Plaintiff's [92-1] Sur-Reply was helpful to its resolution of Defendants' [88] Motion to Stay, and because Defendants indicate that they do not oppose Plaintiff's motion to file that sur-reply, the Court **GRANTS** Plaintiff's [92] Motion for Leave to File Sur-Reply.

[4] Significant prior rulings in this matter by this Court and the Court of Appeals include *Loumiet v. United States*, 968 F. Supp. 2d 142 (D.D.C. 2013) (*"Loumiet I"*); *Loumiet v. United States*, 65 F. Supp. 3d 19 (D.D.C. 2014) (*"Loumiet II"*); *Loumiet v. United States*, 106 F. Supp. 3d 219 (D.D.C. 2015) (*"Loumiet III"*); *Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016) (*"Loumiet IV"*); *Loumiet v. United States*, 255 F. Supp. 3d 75 (D.D.C. 2017) (*"Loumiet V"*); and *Loumiet v. United States*, 292 F. Supp. 3d 222 (D.D.C. 2017) (*"Loumiet VI"*). In addition, the D.C. Circuit previously ruled on Plaintiff's application for attorney fees under the Equal Access to Justice Act ("EAJA") in connection with his defense before the Office of the Comptroller of the Currency. *Loumiet v.Office of Comptroller of Currency*, 650 F.3d 796, 798 (D.C. Cir. 2011) (*"Loumiet EAJA"*).

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)) (internal quotation marks omitted); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). A party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

The trial court's "broad discretion in its handling of discovery" has long been recognized in this Circuit. *E.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 737 (D.C. Cir. 2007) (quoting *Brune v. IRS*, 861 F.2d 1284, 1288 (D.C. Cir. 1988)) (internal quotation marks omitted). The Court must exercise particular care in discovery matters where a qualified immunity defense has been raised. In *Ashcroft v. Iqbal*, the Supreme Court clearly articulated the concerns surrounding discovery in such cases: "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" 556 U.S. 662, 685 (2009) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). This consideration had been at the foundation of the Supreme Court's frequent articulation of the principle that "[u]ntil this threshold immunity question is resolved, discovery should

not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (applying *Harlow* and stating that "if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery"); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (summarizing *Harlow* as indicating that, absent adequate allegations, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"). The D.C. Circuit has remarked (only just prior to the Supreme Court's decision in *Iqbal*) that the qualified immunity defense "entitles government officials 'not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery . . . , as [i]nquiries of this kind can be particularly disruptive of effective government.'" *Wuterich v. Murtha*, 562 F.3d 375, 382 (D.C. Cir. 2009) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)) (alterations in original) (internal quotation marks omitted).

### III. DISCUSSION[5]

Through its [71] Memorandum Opinion and [72] Order, the Court abided by controlling authority urging early resolution of immunity issues. *See* Mem. Op. and Order, ECF No. 70, at 5-6, 8 (staying discovery until that decision based on, e.g., *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Harlow*, 457 U.S. at 818). Individual Defendants now appeal the Court's decision not to recognize immunity as to Defendants Rardin, Sexton, and Schneck, rendering any intermediate discovery as problematic in practice as it was when the Court previously stayed discovery pending that decision.

At the threshold, there is some question as to whether this Court even has

---

[5] The Court has considered the parties' briefing in entirety and finds that any arguments not expressly addressed below do not alter its decision whether to stay discovery.

jurisdiction to entertain certain discovery while Individual Defendants' appeal is pending. Defendants argue that appeal "divests the Court of jurisdiction to entertain further proceedings on Plaintiff's *Bivens* claims while the interlocutory appeal is pending." Defs.' Mot. at 3. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (per curiam) (emphasis added); *see also United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (recognizing some exceptions to this general rule that do not expressly include appeal from denial of qualified immunity defense). Plaintiff appears not to dispute this, *see* Pl.'s Opp'n at 6-7 (citing *Griggs*, 459 U.S. at 58), but instead urges that "the immunity appeal does not divest this Court of jurisdiction over the [Federal Tort Claims Act ("FTCA")] claims," *id.* at 2. Defendants effectively concede the implication of *Griggs* that the Court retains jurisdiction over the FTCA claims not on appeal. *See* Defs.' Reply at 3-4 (discussing evidently unsuccessful attempt to limit Plaintiff to "discovery requests that are narrowly tailored and proportional to his FTCA claims against the United States"). The Court shall consider whether to permit discovery as to those FTCA claims.

Even an effort to obtain such circumscribed discovery must comport with this Court's discretion to manage discovery efficiently. The Court rejects Plaintiff's oblique assertion, in a footnote, that the Court should make this decision under the four-factor test applicable to stay of a decision pending appeal. *See* Pl.'s Opp'n at 2 n.3 (citing one such factor in arguing that "defendants were required to make a 'strong showing that [they are] likely to succeed on the merits' in order to be awarded a stay" (quoting *District of Columbia*

*v. Vinyard*, 901 F. Supp. 2d 77, 89 (D.D.C. 2012) (Kollar-Kotelly, J.))); *Vinyard*, 901 F. Supp. 2d at 89 (quoting four-factor standard discussed in *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). Defendants are not asking the Court to stay its own decisions—or, as in *Vinyard*, the decision of a hearing officer—pending appeal of them. Rather, they seek a decision to stay discovery, which Plaintiff has prematurely attempted to initiate, pending a D.C. Circuit determination that almost certainly will affect discovery. Nor does Plaintiff make any effort to justify the application here of the general standard for staying a decision pending appeal, in light of the Supreme Court's specific guidance regarding discovery during resolution of qualified immunity issues. *See, e.g.*, Defs.' Reply at 3 n.2; *Mitchell*, 472 U.S. at 525-30 ("*Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" (quoting *Harlow*, 457 U.S. at 817)). The Supreme Court urges caution where discovery may entangle individuals potentially protected by qualified immunity.

Plaintiff argues that, unlike his prior discovery requests, he now tailors his requests to seek documents solely from the Government, which is not potentially immune, rather than from Individual Defendants. Pl.'s Opp'n at 4; Pl.'s Sur-Reply at 2. But the Court is not persuaded that Individual Defendants would not have any role in dealing with this narrowed discovery request. Indeed, Individual Defendants have knowledge of what transpired between themselves and Plaintiff; the Government might seek their input before making any production pursuant to Plaintiff's requests. Individual Defendants even may *want* to review the Government's discovery responses, notwithstanding their objection to discovery proceeding against either the Government or themselves, because the Court's *Bivens* rulings mean that they could be held personally liable in this action. As Defendants

6

observe, "[t]he discovery sought against the United States would be freely transferrable against and almost certainly used to establish a factual record against the Individual Defendants." Defs.' Mot. at 9; *see also* Pl.'s Sur-Reply at 2 (admitting that "documents relevant to the FTCA claims may also be relevant to the *Bivens* claims"). The likelihood that Individual Defendants would be asked or invited to review discovery responses prior to the D.C. Circuit's decision is not mitigated by the fact that they currently share counsel with the Government, Pl.'s Opp'n at 10 & n.11, nor by any possibility that documents relevant to both FTCA and *Bivens* claims may be produced eventually regardless, Pl.'s Sur-Reply at 2.

As it did in its prior decision to stay this case, the Court again finds that the concerns articulated in *Iqbal* appropriately guide the Court's exercise of its discretion:

> It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

556 U.S. at 685-86. It is true that the Supreme Court made the above observation in a context other than a decision to stay discovery pending appeal of an immunity ruling. *See id.* at 684-86 (locating this discussion in context of construing Rule 8 pleading standards); Pl.'s Opp'n at 8 (arguing that this language quoted in Defendants' motion is "*dicta*"). However, *Iqbal* did decide that the rejection of a qualified immunity defense in that case warranted interlocutory appeal, 556 U.S. at 672-73, recognizing the importance of resolving such issues before a case should proceed further. *Iqbal* is therefore consistent with the Supreme Court's frequent assertions that qualified immunity issues should be

7

resolved before discovery. *See Crawford-El*, 523 U.S. at 598; *Mitchell*, 472 U.S. at 526; *Harlow*, 457 U.S. at 818.

Plaintiff's countervailing authority consists mostly of decisions by district courts—none in this jurisdiction—that seem simply to demonstrate that trial courts have discretion to permit discovery in similar circumstances. *See* Pl.'s Opp'n at 2-3 n.4. The few circuit court decisions cited by Plaintiff—also in other jurisdictions—are similarly merely permissive or otherwise distinguishable. *See id.* (citing *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007); *Lugo v. Alvarado*, 819 F.2d 5, 7 (1st Cir. 1987)). The Fifth Circuit recognizes that "[t]he district court *may* compel discovery disclosures" concerning claims not subject to qualified immunity assertions, rather than that the district court must always do so. *Alice L.*, 492 F.3d at 565 (emphasis added). The First Circuit's decision in *Lugo* was based on appellant's having already engaged in discovery prior to seeking a stay thereof, and on certain considerations focused on the equitable relief sought alongside damages. *Lugo*, 819 F.2d at 6-7. No such discovery has been taken by Defendants here, and Plaintiff seeks only damages. Mindful of other courts' discretion to manage their own cases, this Court shall exercise its own discretion to manage this one in light of Supreme Court precedent.

Furthermore, Plaintiff should not have proceeded with discovery prior to the Initial Scheduling Conference that the Court had already scheduled. *See* Min. Order of Dec. 11, 2017. As with his prior attempt to initiate discovery, Plaintiff's current total of thirty requests for production exceeds the Court's standard limitation to twenty-five requests, of which Plaintiff previously was advised. *See* Mem. Op. and Order, ECF No. 70, at 7

(discussing Court's presumptive limit). The Court would have considered, at the Initial Scheduling Conference, any argument for an exception to its presumptive limit.

The current iteration of the requests for production is once more so "far-reaching" that "it is almost certain that Defendants will seek to litigate its scope," Mem. Op. and Order, ECF No. 70, at 7, particularly as to requests that arguably invite Individual Defendants' review of any response. *See, e.g.*, Defs.' Mot. at Ex. 1 ¶ 4 ("All documents and communications relating to allegations or investigations of racial bias or retaliatory conduct involving the OCC *or the Individual Defendants*." (emphasis added)). Any attempt to resolve such disputes during the pending interlocutory appeal—which may trench on jurisdictional boundaries discussed above—would ultimately waste the Court's and the parties' resources if they must revisit discovery disputes after the D.C. Circuit's resolution of the *Bivens* and qualified immunity issues.

Plaintiff does not dispute that his discovery requests touch on the interests of Individual Defendants. Rather, he argues that case-dispositive motions are no longer pending, as they were when the Court previously granted a stay, nor does the proposed discovery seek more than documents, unlike the depositions at issue in some of the case law. *See, e.g.*, Pl.'s Opp'n at 3-4, 9-10. Plaintiff also seems to suggest that Individual Defendants would be involved in discovery anyway even if they are found immune from liability. *See id.* at 9 (discussing, e.g., *Galarza v. Szalczyk*, 2012 WL 627917, at *3 (E.D. Pa. Feb. 28, 2012)). None of these factors truly mitigates the concerns described above with premature involvement of potentially immune individuals, whose role in this case conceivably would differ if a D.C. Circuit decision renders them non-party witnesses, rather than defendants at risk of liability. Any discovery now almost certainly would need

9

to be revisited after the D.C. Circuit's decision, regardless of whether it is in Individual Defendants' favor.

Beyond the passage of time, Plaintiff's claim of prejudice is limited to "the risk that critical evidence will be lost and witnesses' memories will fade." *Id.* at 11-12. However, this issue arises whenever there is a reason to postpone discovery. The Court presumes that the parties long ago instituted litigation holds triggering the retention of documents relevant to this matter. But even if they did not, this latest stay is unlikely to make the difference for documents generated up to two decades ago. *See generally* Compl., ECF No. 1 (discussing factual background from late 1990s through 2012 filing of this case). The Court previously articulated why it should pause for the resolution of "important legal questions" in this case. Mem. Op. and Order, ECF No. 70, at 7-8. A variety of such questions have been important at different stages of this case; currently the key issues are the availability of the *Bivens* claim and certain Individual Defendants' alleged immunity thereto. Despite the Court's own determination of those questions, now the D.C. Circuit's view has been invited once again in this case. "The Court finds that any prejudice to Plaintiff in delaying the commencement of discovery is outweighed by the necessity of [awaiting the D.C. Circuit's] resol[ution] [of] the 'threshold immunity questions' before permitting discovery to commence." *Id.* at 8 (citing *Harlow*, 457 U.S. at 818).

## IV. CONCLUSION

For the foregoing reasons, in an exercise of the Court's discretion, the Court **GRANTS** Defendants' [88] Motion to Stay Discovery Pending Interlocutory Appeal and **GRANTS** Plaintiff's [92] Motion for Leave to File Sur-Reply.

The Court shall extend its **STAY** of all discovery, including the Government's

obligation to respond to Plaintiff's discovery requests of January 26, 2018, pending resolution of Individual Defendants' interlocutory appeal. *See* Min. Order of Feb. 22, 2018 (granting temporary stay until resolution of [88] motion). Within 14 days of the issuance of the D.C. Circuit's mandate, the parties shall submit a Joint Status Report to this Court indicating how they propose to proceed.

An appropriate Order accompanies this Memorandum Opinion.

Dated: June 5, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge