UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLOS LOUMIET,
    Plaintiff

v.

UNITED STATES OF AMERICA
    Defendant.

Civil Action No. 12-1130 (CKK)

MEMORANDUM OPINION
(June 16, 2023)

Proceeding under the Federal Tort Claims Act, Plaintiff Carlos Loumiet ("Plaintiff" or "Loumiet"), a banking attorney, alleges that certain employees of the Office of the Comptroller of the Currency unconstitutionally and tortiously retaliated against him for his complaint that these employees violated the civil rights of his corporate client. After two appeals to the United States Court of Appeals for the District of Columbia Circuit, this case is now before the Court on Defendant's [109] Motion for Summary Judgment. As a threshold matter, the Court sanctions Plaintiff's failure to comply with LCvR 7(h) by assuming all material facts asserted by Defendant as admitted. Having done so, the Court holds that there are no material facts in the record that would permit a reasonable jury to find that Defendant unconstitutionally retaliated against Plaintiff for protected speech, the Court now lacks subject matter jurisdiction over this case. Accordingly, and upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole,

---

[1] The Court's consideration has focused on the following documents:
- Defendant's Motion for Summary Judgment ("Motion" or "Mot."), ECF No. 109;
- Defendant's Statement of Undisputed Material Facts ("SOMF"), appended to ECF No. 109;
- Plaintiff's Memorandum of Points and Authorities and Statement of Genuine Issues in Opposition to the Government's Motion for Summary Judgment ("Opp."), ECF No. 111;
- Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("RSOMF"), ECF No. 111-19; and

1

the Court **GRANTS** Defendant's Motion and **DISMISSES** the case for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Procedural Background

During its pendency, the contours of this case have been clearly delineated. *See Loumiet v. United States,* 828 F.3d 935 (D.C. Cir. 2016). In its present posture, Plaintiff asserts four state law tort claims against the United States: intentional infliction of emotional distress, invasion of privacy, negligent supervision and civil conspiracy. These claims arose, he alleges, from prosecutorial actions taken in retaliation against him for reporting on inappropriate behavior by Office of the Comptroller of the Currency ("OCC") bank examiners who were examining the bank for which he was counsel. The Court of Appeals held here that while the discretionary-function exception of the Federal Tort Claims Act typically applies in cases involving the decision to prosecute, it "does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription." *Id.* at 943. This Court was therefore directed to "determine in the first instance whether Loumiet's complaint plausibly alleges that the OCC's conduct exceeded the scope of its constitutional authority so as to vitiate discretionary-function immunity." *Id.* at 946.

In accordance with the Court of Appeals' instructions, and following extensive pleading and appellate practice, Loumiet's claims against the United States proceeded to discovery in April 2020. The Court gave the parties some ten months to complete discovery. *See* ECF No. 98,

- Defendant's Reply Memorandum of Points and Authorities in Support of the United States' Motion for Summary Judgment ("Repl."), ECF No. 113.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Scheduling and Procedures Order, at 5. Notably, although Loumiet served document requests, receiving some 280,168 pages of production, Loumiet requested no depositions, served no interrogatories or subpoenas, and disclosed no expert witness. *See* Defendant's [105] Discovery Status Report, at 1; Defendant's [109] Memorandum, at 1. Defendant's Motion for Summary Judgment followed the close of discovery.

**B. Factual Background**

1. <u>Local Rule 7(h)</u>

Before turning in more detail to the material facts at issue, the Court must pause to address Plaintiff's noncompliance with this jurisdiction's local rules. As the Court has warned the parties repeatedly, LCvR 7(h) requires the parties advancing or opposing summary judgment to concisely set out the genuine issues of material fact that are agreed or disputed. Compliance with the local rule allows the Court to make an efficient comparison of the parties' contentions and their citations to record evidence. Regrettably, despite the repeated admonitions of this Court to the parties to comply strictly with Local Civil Rule 7(h), *see* ECF No. 106, Scheduling and Procedures Order (March 22, 2021) (citing *Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002)); ECF No. 98, Scheduling and Procedures Order (April 28, 2020) (same); ECF No. 3, Order Establishing Procedures (July 27, 2012) (same), Loumiet signally failed to comply. In its Reply, the government trenchantly pointed out that Loumiet had failed to comply with Local Civil Rule 7(h) by failing to respond to its Statement of Undisputed Material Fact on a fact-by-fact basis with citations to contrary record evidence. Yet, despite being aware of his error, at no time thereafter did Loumiet make any effort to seek leave to supplement the record or to provide a new, compliant, Statement of Material Facts in Dispute.

The United States submitted 203 paragraphs of facts it contended were undisputed and material. While its Statement is exhaustive, it nonetheless fell to Loumiet to respond to each fact pursuant to Local Civil Rule 7(h) and to controvert it by citing to particular parts of materials in the record. This Court has observed that "[b]oth the moving party's initial statement and the opposing party's responsive statement must be based on references to the parts of the record relied on to support the statement." *Glass v. Lahood*, 786 F. Supp. 2d 189, 197 (D.D.C. 2011) (cleaned up). The Local Rule facilitates the efficient use of judicial resources by "plac[ing] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Id.* (cleaned up). Local Rule 7(h) thus required Loumiet "to support each individual factual statement identified in [his] responsive statement with supporting references to the record." *Id.* at 199.

More importantly, the Rule places the onus on the nonmoving party to actually contest the moving party's facts. Where the nonmoving party fails to do so, the Court "may assume that facts identified by the moving party in its statement of material facts are admitted[.]" LCvR 7(h)(1). This local rule aligns well with Federal Rule of Civil Procedure 56, which provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A).

Here, Loumiet has simply failed to comply. Apart from 57 paragraphs Loumiet conceded were undisputed, Loumiet did not take issue with the remaining facts other than by general statements that the asserted facts were disputed [2] because: either (1) the United States is "collaterally estopped from relitigating" the underlying administrative or criminal proceedings,

---

[2] Two statements of fact were objected to by Loumiet on the basis of collateral estoppel but were nonetheless not disputed by him. *See, e.g.,* App'x to Memorandum Opinion at ¶¶ 38-39.

4

*see* RSOMF at 8-10, or (2) because they were generally disputed in his Statement of Genuine Issues, *see* Opp. at 1-11.  This Court has frequently rejected a party's efforts to evade this local rule after multiple warnings, and this case will be no exception.  *See, e.g.*, *Morris v. Carter Goble Lee, Inc.*, 113 F. Supp. 3d 289, 291 (D.D.C. 2015).[3]  Fifteen other paragraphs (Nos. 189-203), also in stark violation of Rule 7(h), are disputed generally, with blanket and unspecified references to the 12-page Statement of Genuine Issues in his Opposition. The 25 paragraphs in this Statement do not track the Defendant's Statement of Undisputed Material Fact.  They are a mix of argument, supposition, beliefs, and self-serving contentions that restate Loumiet's theory of the case as originally set out in his Complaint.  More to the point, they do not directly specifically address the various pieces of significant record evidence cited by the government in denying any retaliatory animus or actions.

Notwithstanding the wholesale failure to comply with Rule 7(h), the Court undertook to parse the contentions and responses in order to divine whether Loumiet did meet his burden to fairly dispute the government's Statement of Undisputed Material Fact with record evidence.  The Court attaches that analysis as an appendix.  As explained further therein, Loumiet does not actually place any particular factual allegation at issue.

---

[3] *See also, e.g., Burke v. Gould,* 286 F.3d 513, 517-18 (D.C. Cir. 2022) (summary judgment affirmed where nonmoving party did not cite record evidence or set forth specific material facts); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (pursuant to local rule, the district court is to deem admitted the movant's facts that are uncontroverted by the opposing party's statement of facts); *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988) (no abuse of discretion in district court accepting as true properly supported statement of facts where opposing party failed to submit counterstatement); *Tarpley v. Greene*, 684 F. 2d 1, 7 (D.C. Cir. 1982) (summary judgment affirmed where nonmoving party failed to cite record evidence, relying on the complaint itself); *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980) (failure to provide a proper statement of facts under local rule may be fatal to a delinquent party's position).

Nor can Defendant contest Defendant's statement of material facts through summary incantation of collateral estoppel. In its usual form, sometimes called "defensive" collateral estoppel, a defendant seeks to bar a plaintiff from contesting facts found in a prior proceeding. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 328-29 (1979). This form of collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326. If anything, it is *Defendant* seeking to stop *Plaintiff* from relitigating facts from prior proceedings by relying on record evidence from the prior proceedings, record evidence that is Plaintiff's own sworn testimony and documents.[4] It appears to be *Plaintiff* who seeks re-litigation or, at best, a questionable use of "offensive" collateral estoppel, a doctrine to be applied sparingly. *See Jake Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984) (Mikva, J.).

However, whether or not collateral estoppel even applies here as a legal matter is largely academic. Loumiet's generalized contention that these facts are disputed *solely* because he contends they are ostensibly seeking to relitigate, without any explanation of how that might be the case, cannot be given credence. Simply invoking the doctrine in a response to a statement of material facts is insufficient to place facts at issue, for it contests neither specific facts nor "support[s] [factual] allegations . . . with facts in the record." *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (internal quotation marks omitted).

Altogether, the Court must assume Defendant's statement of material facts as admitted.

---

[4] *See, e.g.,* App'x to Mem. Op. at ¶¶ 33-35, 46-54, 56, 60, 65, 67-68, 77, 79-85, 99-101, 110. Such party admissions and testimony do not implicate collateral estoppel.

2. Material Facts

Having deemed Defendant's material facts as admitted, the Court summarizes the particularly key facts advanced in Defendant's statement of material facts.[5] The facts underlying this case began more than twenty years ago, in 1998. At that time, Loumiet represented a regional bank in Florida, Hamilton Bank, N.A. Hamilton Bank made a number of risky investments, including a $22,000,000 outlay for debt securities it purchased from two other banks. As the D.C. Circuit summarized the transaction:

> Hamilton invested $22M in Russian debt instruments, which subsequently lost value in the summer of 1998. To conceal the loss, the Bank swapped the Russian debt instruments for other financial instruments. General accounting rules require such swaps to be accounted for as related transactions. By not doing so, the Bank made it appear as if it managed to sell its Russian assets at face value, thereby hiding their highly discounted sales prices.

*Loumiet v. Off. of the Comptroller of the Currency*, 650 F.3d 796, 797-98 (D.C. Cir. 2011) (internal citations and quotation marks omitted) ("*Loumiet I*"). In September 1999, OCC examiners discovered the fraud and the following April, the OCC issued a temporary cease-and-desist order requiring the Bank to take certain remedial measures. *Loumiet I*, 650 F.3d at 798. Hamilton's Audit Committee retained an outside law firm, Greenberg Traurig LLP ("Greenberg"), which was tasked with conducting an independent investigation of the alleged fraud. *Id*. A team of Greenberg attorneys, including Loumiet, reviewed certain documents, interviewed Hamilton officials, and ultimately issued a report to the Bank's Audit Committee on November 15, 2000. SOMF ¶¶ 31 (report), 49 (interview). The November 2000 report found "no convincing evidence" to establish

---

[5] The facts here are largely identical to the Court discussion in *Loumiet v. United States*, 65 F. Supp. 3d 19, 23-24 (D.D.C. 2014) ("*Loumiet II*").

7

that Bank Executives "intentionally misled" the Bank's outside auditor or the Bank's own Audit Committee. *Loumiet I*, 650 F.3d at 798.

In January 2001, the OCC sent Greenberg a letter responding to the November 2000 report. SOMF ¶ 105. The letter informed the firm that the OCC had obtained sworn testimony from an officer at one of the counterparties to Hamilton in the adjusted price trades. *Id.* The officer testified that Hamilton's executives knowingly executed the adjusted price trades, contradicting the report issued by Plaintiff's firm. *Id* ¶¶ 105-106; *Loumiet I*, 650 F.3d at 798. The OCC also orally identified a number of "red flags[,]" facts which tended to show that the Bank's management did knowingly participate in the fraudulent transactions. SOMF ¶ 109. Loumiet responded to the OCC's letter and addressed the "red flags" in a follow-up report to the Bank's Audit Committee. *Id.* ¶ 110. This letter reaffirmed the conclusions of his firm's earlier report. *Id.*

In March 2001, Plaintiff wrote to Treasury Inspector General Jeffrey Rush and other Treasury Department officials, expressing concerns about the OCC's enforcement action against the Bank. *Id.* ¶ 112. Plaintiff claimed that during his participation in the OCC investigations, he became aware of improper conduct by OCC examiners. *Id.* Plaintiff requested an independent investigation by the Office of Inspector General ("OIG"), alleging that OCC examiners made racist comments in dealing with Hamilton's Hispanic employees, and disregarded their own agency's regulations and precedents. *Loumiet v. United States*, 828 F.3d 935, 939 (D.C. Cir. 2016) ("*Loumiet III*"). In April 2001, Plaintiff sent the Treasury Secretary and the OIG a second letter, again expressing concerns regarding the OCC's regulatory actions. SOMF ¶ 115. On July 18,

2001, the Treasury Inspector General notified Plaintiff that the OIG's investigation concluded that nothing raised in Loumiet's letters warranted further action. *See id.* ¶ 119.

On January 2002, after concluding that Hamilton was operating in an unsafe and unsound manner, the OCC closed the Bank and appointed the Federal Deposit Insurance Corporation as its receiver. *Loumiet I*, 650 F.3d at 798. Subsequently, a grand jury indicted three of the Bank's senior officers for bank and securities fraud in connection with the adjusted price trades. *United States v. Masferrer*, 514 F.3d 1158, 1160-61 (11th Cir. 2008). The former CFO and President pled guilty and were sentenced to 28 months in prison, while the Bank's CEO was convicted and sentenced to 30 years in prison. *Id.* at 1161. Ultimately, the Eleventh Circuit affirmed the conviction of the Bank's CEO. *Id.* at 1165.

On November 2006, the OCC initiated an enforcement proceeding against Plaintiff, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") of 1989, Pub. L. No. 101-73, 102 Stat. 183 (codified in scattered sections of Title 12 of the U.S. Code). *Loumiet I,* 650 F.3d at 798. The action, brought by the OCC's Enforcement and Compliance Division, alleged that Plaintiff was an "institution-affiliated party" ("IAP") who, as part of his role in the independent investigation of Hamilton, had "knowingly or recklessly . . . breach[ed his] fiduciary duty," and as a result "caused . . . a significant adverse effect" on the Bank. *Loumiet I*, 650 F.3d at 799 (quoting 12 U.S.C. § 1813(u)(4)). The OCC sought a monetary penalty against Plaintiff and sought to permanently ban him from representing FDIC-insured banks. SOMF ¶ 160. Ultimately, an Administrative Law Judge ("ALJ") recommended complete

9

dismissal of the Division's claims, SOMF ¶ 188, with which the Comptroller concurred, *Loumiet I*, 650 F.3d at 799.

Following the Comptroller's dismissal of the administrative proceeding, on August 26, 2009, Plaintiff filed an application with the ALJ for attorney's fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. §504. *Loumiet I*, 650 F.3d at 799. On July 20, 2010 the ALJ issued a recommended decision denying the application. *Id.* Plaintiff appealed the denial of his EAJA claim to the D.C. Circuit, which unanimously reversed the agency's determination, concluding that "the Comptroller was not 'substantially justified' in bringing the underlying administrative proceedings against Loumiet." *Loumiet I*, 650 F.3d at 797. Although Plaintiff maintains that the administrative proceeding was motivated by his complaints of discrimination, OCC officials deny commencing the action for any reason other than Loumiet's misfeasance. SOMF ¶¶ 189-203.

Before this Court, Loumiet argued that the Comptroller and its agents, through the United States, should be liable for damages in tort, based in part on purported retaliation against Plaintiff for his complaints of discrimination. *Loumiet II*, 65 F. Supp. 3d at 25-26. The Court disagreed, concluding that the Federal Tort Claims Act barred recovery pursuant to the discretionary-function exception. *Id.* The United States Court of Appeals for the District of Columbia Circuit, however, reversed in part, concluding that the discretionary-function exception applied as a matter of law, concluding that there is no bar to recovery where a federal employee makes a discretionary decision that nevertheless exceeds constitutional bounds. *Loumiet III*, 828 F.3d at 942-43. In effect, the Court of Appeals instructed this Court to determine whether, as a matter of law, the discretionary-function exception applied to the OCC's decision to commence administrative proceedings and, if not, whether the United States should be vicariously liable in tort. *See id.* at

10

949.  On these questions, the United States has moved for summary judgment.  The Court now turns to these questions on the merits.

## II. LEGAL STANDARD

The Court may grant summary judgment where, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (internal citations omitted).

"Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e) (emphasis in original)).

11

### III.     DISCUSSION

The United States essentially raises two classes of argument in favor of summary judgment. First, the United States argues that the Court lacks jurisdiction because the United States has not waived sovereign immunity for purportedly tortious, but discretionary, actions.  Second, and in the alternative, the United States maintains that each of Plaintiff's surviving tort claims fails on the merits.  Because the Court agrees that it lacks subject matter jurisdiction, it does not reach the merits of Plaintiff's claims. *See Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 384 (D.C. Cir. 2022) ("[A] court 'may not rule on the merits of a case' without jurisdiction[.]" (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)).

The Federal Tort Claims Act provides for a limited waiver of sovereign immunity in suits against the United States for tortious actions committed by federal employees acting in the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).   The limited waiver is, however, "subject to a number of express exceptions."  *Sloan v. U.S. Dep't of Hous. and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). At issue here is the "discretionary function exception."  By statute, this exception strips a federal district court from exercising jurisdiction over "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved by abused." 28 U.S.C. § 2680(a).

This exception, as its name suggests, "covers only acts that are discretionary in nature[,]" *United States v. Gaubert*, 499 U.S. 315, 322 (1991), which the Supreme Court has described as those acts that "involv[e] an element of judgment or choice." *Berkovitz v. United States*, 486 U.S.

531, 536 (1988). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536). If a court determines that "the challenged conduct involves an element of judgment[,]" it must next decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (quoting *Berkovitz*, 486 U.S. at 536).

The Court has previously held that OCC's decision to commence the administrative proceeding against Plaintiff was "discretionary" within the meaning of the discretionary function exception. *See Loumiet II*, 65 F. Supp. 3d at 25. This holding was affirmed *sub silentio* on appeal. *See Loumiet III*, 828 F.3d at 942 ("This court has long held that the decision whether to prosecute is typically a quintessentially discretionary function . . . ." (internal quotation marks omitted)). The "inquiry into the viability of Loumiet's FTCA claims[, however,] does not end there." *Id.* Rather, the discretionary function does not apply here if "the OCC's conduct exceeded the scope of its constitutional authority." *Id.* at 946. In other words, the discretionary function exception does not apply if a reasonable jury could conclude that OCC's decision to commence the administrative proceedings was retaliation for protected speech, i.e., Loumiet's complaints of racial discrimination at OCC. *See id.* at 946 & n.4 (discussing, exclusively "the First Amendment right to be free from retaliatory prosecution" (quoting *Moore v. Hartman*, 704 F.3d 1003, 1004 (D.C. Cir. 2013)).

To survive summary judgment on a First Amendment retaliation claim, a plaintiff must demonstrate that a reasonable jury could find that: "(1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link

13

between the exercise of a constitutional right and the adverse action taken against him or her." *See Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 46 (D.D.C. 2021) (quoting *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)) (motion to dismiss); *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018).

Now that we are no longer at the pleading stage, Plaintiff must point to some record evidence of causation. *See Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006). To establish causation, "[i]t is not enough to show that an official acted with a retaliatory motive and the plaintiff was injured." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Rather, the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

Here, Plaintiff can point to no overt evidence of "but for" discriminatory motive, for the Court has assumed Defendant's statement of facts as admitted. Specifically, the Court has assumed as admitted that OCC commenced the administrative proceeding against Loumiet because it believed that there was sufficient evidence to demonstrate that Loumiet and his firm "fail[ed] to perform an honest investigation" and that failure "caused or was likely to cause 'harm'" to Hamilton. SOMF ¶ 164. Even had Loumiet properly contested this admitted fact, Loumiet has pointed to no record evidence beyond the mere fact of his protected activity and that a decision of the United States Court of Appeals concluded that OCC's legal positions were not substantially justified as a matter of law. Plaintiff offers no legal authority for the proposition that merely advancing an erroneous legal theory to address his professional misfeasance, by itself, establishes causation, much less discriminatory animus alone.

Therefore, Loumiet can rely only on temporal proximity. *See, e.g., Cones v. Shalala,* 199 F.3d 512, 521 (D.C. Cir. 2000) (causal connection can be shown by knowledge of protected

14

activity and retaliatory action shortly thereafter). Here, Loumiet's case at summary judgment is all the weaker. Five years elapsed between Loumiet's protected activity and the administrative proceedings, far beyond a 20-month lapse that the Supreme Court has held to suggest "no causality at all." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 274 (2001) (noting further that the temporal connection must be "very close"). In other words, whether or not Loumiet had complied with Local Rule 7(h) in his briefing, there is still no record evidence permitting a reasonable jury to find that OCC would not have commenced administrative proceedings against Loumiet absent his protected speech.

Given the lack of any evidence of retaliation or causation, Loumiet has not identified any evidence of a constitutional violation that would overcome the FTCA's discretionary function exception. Accordingly, the United States retains sovereign immunity and the case in its entirety must be dismissed for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's [109] Motion for Summary Judgment. An appropriate order accompanies this memorandum opinion.

Dated: June 16, 2023                             /s/
                                                                   COLLEEN KOLLAR-KOTELLY
                                                                   United States District Judge